Filed 12/29/20 In re J.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

<table>
<tr><td>In re J.R., et al., Persons Coming Under the Juvenile Law.</td><td>B304328</td></tr>
<tr><td>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.C. and L.R.,<br><br>Defendants and Appellants.</td><td>(Los Angeles County Super. Ct. No. 19CCJP04241A-B)</td></tr>
</table>

APPEAL from orders of the Superior Court of Los Angeles County, Martha Matthews, Judge. Affirmed in part and dismissed in part.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant L.R.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant M.C.

Mary C. Wickham, County Counsel and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

M.C. (Mother) and L.R. (Father) are the parents of two children: two-and-a-half year old J.R. and 15-month-old A.R. (collectively, the Minors).[1] The parents appeal juvenile court orders assuming dependency jurisdiction over the Minors and removing them from the parents' custody based on evidence of their failure to protect the children from the parents' substance abuse. We are asked to decide whether substantial evidence supports the juvenile court's jurisdiction findings and removal order.

## I.  BACKGROUND
### A.     *Mother's Arrest for Methamphetamine Possession and the Discovery of a Methamphetamine Pipe in the Bedroom Where Minors Slept*

In April 2019, the police arrested Mother, who was pregnant at the time, for methamphetamine possession. Mother told the arresting officer it had been three years since she last used methamphetamine,[2] the methamphetamine in her possession belonged to Father, and she was on her way to report him to his probation officer.

---

[1]     These were the Minors' ages at the time the dependency proceedings commenced.

[2]     In 2018, the court terminated Mother's parental rights over three of her children that were under the court's jurisdiction due partly to Mother's abuse of illegal drugs, including methamphetamine. Another of Mother's children was adopted in 2006 by relatives in Texas. Before that, in 2003, the juvenile court terminated Mother's parental rights over two other daughters, also partly due to Mother's substance abuse.

Two months later, police visited the family's home after Father failed to report to his probation officer. In the bedroom shared by the parents and the Minors, police discovered a methamphetamine pipe with residue inside of it. Police arrested Father and observed Mother seemed "erratic and nervous"; the officers could not determine, however, whether she was under the influence of an illegal substance.[3]

The Los Angeles County Department of Children and Family Services (the Department) began investigating the Minors' welfare after Father's arrest. During an interview with a Department social worker, Mother admitted she lost her parental rights to six of her older children, two of whom were born with cocaine or methamphetamine in their systems. Mother was still then pregnant and she admitted she was using marijuana. After several delays, Mother submitted to a drug test which yielded negative results.

During his interview with a Department social worker, Father admitted the methamphetamine pipe was his. Father's on-demand drug test was negative and his probation officer reported Father was regularly tested for drugs and the results had been positive only for marijuana.

B.    *The Dependency Petition and Initial Proceedings*

On July 3, 2019, the Department filed a multi-count dependency petition alleging J.R. and A.R. were children described by Welfare and Institutions Code section 300,

---

[3]    A probation officer who was present when Father was arrested similarly observed Mother's "nervous" and "jittery" manner and believed Father was "taking the blame for the pipe."

4

subdivisions (a), (b), and (j).[4]  As relevant for our purposes, the petition alleged in count b-1 that the Minors were at risk of serious harm as a result of the discovery of the methamphetamine pipe in their bedroom and Father's arrest for violating the terms of his probation.  Count b-3 alleged the Minors were endangered by Mother's current use of marijuana and her 17-year history of substance abuse (a history that lead to several of the Minors' siblings being prior dependents of the juvenile court).  The subdivision (j) count asserted the Minors were at risk as a result of the abuse and neglect suffered by their six older siblings due to Mother's history of substance abuse.

Following the filing of the petition, Mother was interviewed by a Department investigator.  Mother, who was then 43 years old, told the investigator that she began using cocaine in 1996 and continued using until roughly 2010; after about six years of sobriety, she began using methamphetamine in or around 2015.  Although Mother claimed she had been sober since approximately 2016, she admitted she enrolled in substance abuse programs in 2017 and 2018.  When the investigator questioned Mother about the inconsistencies in her timeline, she "started to stutter" and offered responses that "did not make sense."  Mother also gave a different account of why she was arrested for possession of methamphetamine.  To the Department's investigator, she made no mention of taking the methamphetamine to Father's probation officer; she simply stated that after finding the drug, she planned to throw it away.

---

[4]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

5

Mother submitted to seven random drug tests between June and August 2019, and all of these were negative.

The investigator was unable to interview Father because he was arrested in August 2019 for violating the terms of his probation by associating with gang members who were in possession of methamphetamine. Prior to his arrest, Father had twice tested negative for drugs but also failed to appear for testing on three occasions.

In advance of the jurisdiction and disposition hearing, the Department reported Mother was enrolled in several counseling programs, including an outpatient drug treatment program. As for Father, the Department advised that he too was enrolled in a substance abuse treatment program and was submitting regularly to drug testing, the results of which had been negative. Although the parents were making efforts to address the circumstances that gave rise to the detention of the Minors, the Department recommended neither parent receive family reunification services. In the Department's view, Mother's unresolved drug use and her failure to learn from her prior dependency cases disqualified her from receiving such services. Similarly, the Department believed that Father continued to make poor life decisions as evidenced by his recent arrests for probation violations.

C.     *The Jurisdiction and Disposition Hearing*

The juvenile court held a jurisdiction and disposition hearing in January 2020. The court admitted Department reports in evidence, as well as exhibits from the parents documenting their participation in treatment programs. After hearing argument, the court sustained the petition in part. The

court sustained the b-1 count in the petition as to Mother and Father, finding the methamphetamine pipe in the family's bedroom to be a "highly incriminating object" from which a "strong inference" can be drawn that one or both of the parents had a "problem with methamphetamine." The court also sustained the b-3 count and the section 300, subdivision (j) count as to Mother, finding her long history of drug abuse and evidence of recent relapses posed a substantial risk to the well-being of the Minors. The court dismissed the remaining petition counts.

With regard to disposition, counsel for the Department and the Minors urged the court to remove the children from the parents' custody. Mother argued the contrary and asserted the principal "trigger" for her drug use—her relationship with Father—was no longer an issue because she had ended the relationship and did not plan on resuming it. Mother did concede, though, that this was a recent development: she ended the relationship only three weeks prior to the hearing. Mother also acknowledged that her current drug treatment program was her third such program and that she had failed to complete the first one.

The juvenile court found Mother's current efforts to address her substance abuse were "precarious" due to several factors. First, there were Mother's differing accounts of her arrest for possession of methamphetamine; as the court observed, "Recovery doesn't work unless a person is honest." The court also found it concerning that Mother waited to separate herself from Father: "One of the most important aspects of recovery is separating oneself from people who are still using, so it should have been obvious quite some time ago that remaining in a relationship with Father was not a good idea, and yet apparently,

the change in their relationship was very, very recent." Finally, the court found it would be inadvisable to return the Minors to Mother when she was also caring for a newborn infant.

The court ordered the Minors removed from their parents' custody due, in principal part, to Mother's "high risk of relapse." Although the Department had recommended the denial of reunification services, the court ordered services for both parents, as well as monitored visitation.

## II. DISCUSSION

There is ample evidence that dependency jurisdiction under section 300, subdivision (j) was proper, and that obviates the need to discuss the remaining bases of jurisdiction found by the juvenile court. (*In re I.J.* (2013) 56 Cal.4th 766, 773-774 (*I.J.*).) Mother's parental rights were terminated as to six of her older children as a result of her substance abuse, and less than one year after completing her second substance abuse treatment program, Mother was arrested for possession of methamphetamine. This, combined with the discovery of the methamphetamine pipe in the bedroom where the Minors slept (no matter which parent was actually using the pipe), adequately establishes a substantial risk of serious physical harm to the Minors.

As for the parents' separate challenge to the disposition order, we have taken judicial notice of a juvenile court minute order stating the Minors were more recently placed back in Mother's custody—the disposition both parents requested. That means there is no effective relief we can provide as to the parents' challenge to the removal order—making it moot.

8

### A. *Substantial Evidence Supports the Jurisdiction Finding*

Section 300, subdivision (j), authorizes a juvenile court to assume dependency jurisdiction over a child when the following two requirements are met: "[t]he child's sibling has been abused or neglected, as defined in subdivision [(b)(1) or other subdivisions], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."[5]  Under section 300, subdivision (b)(1), a child is a dependent child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd.

---

[5]  Section 300, subdivision (j) lists factors for a court to consider when deciding whether to exercise jurisdiction: the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.  (§ 300, subd. (j).)  Subdivision (j) "'allows the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions.  [¶]  The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j).  The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' [Citation.]" (*I.J.*, *supra*, 56 Cal.4th at 774.)

(b)(1).)  In reviewing a juvenile court's jurisdiction findings, "'we look to see if substantial evidence, contradicted or uncontradicted, supports them.'" (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

The requisite substantial evidence to assume jurisdiction over the Minors under section 300, subdivision (j) exists here.  It was undisputed that Mother's parental rights had been terminated for six of her older children due to Mother's struggles with substance abuse, including methamphetamine.  There was also good evidence the Minors were at substantial risk of abuse or neglect at the time of the jurisdiction hearing: both parents had recently been arrested for possessing methamphetamine and police found a methamphetamine pipe (with residue still inside) in the bedroom the Minors shared with their parents.  This evidence is a proper factual predicate for a section 300, subdivision (j) finding.  (See, e.g., *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1651 [evidence supported finding that mother's drug use posed risk of harm where drug paraphernalia containing residue was left where child could reach it]; accord, *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993 ["Leaving drugs or drug paraphernalia within the child's reach is an example of negligent conduct that will support section 300, subdivision (b) dependency jurisdiction"].)

It is no answer, as Mother argues, that she did not test positive for use of methamphetamine in the six months before the jurisdiction hearing.  Mother has an extensive history of drug abuse, including using cocaine and/or methamphetamine while pregnant.  The negative drug tests were a promising development, but the juvenile court certainly had solid grounds to conclude her history of relapse (entering two treatment programs

10

in the two years immediately preceding the filing of the petition, while completing only one of them) was good reason to believe the Minors—who were still very young—remained at substantial risk of serious harm. (See *In re J.C.* (2014) 233 Cal.App.4th 1, 7 [seven months of sobriety insufficient to show parent was not at risk of relapse]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686 [mother's 372 days of sobriety insufficient to show changed circumstances in light of her many years of substance abuse and previous relapses]; see also *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [highlighting the special problem of substance abuse for children of "'tender years'"].)

### B. The Challenge to the Juvenile Court's Disposition Order Is Moot

"At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child." (*In re D.B.* (2018) 26 Cal.App.5th 320, 328.) "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163 [focus of the statute is on averting harm to the child].)

According to juvenile court minute orders we have judicially noticed, the juvenile court found at a September 2020 hearing that Mother had made substantial progress and ordered

11

the Minors returned to her custody on the condition that she continue to drug test and comply with her case plan. Because that is the sole relief sought in this appeal as to the challenge to the juvenile court's disposition order, there is no effective relief we can provide and the challenge is moot. (See, e.g., *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].)

DISPOSITION

The jurisdiction findings are affirmed, and the challenge to the disposition order is dismissed as moot.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We concur:


RUBIN, P. J.


MOOR, J.